UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

Case No. 19-CR-00096 (PP)

SAUL GARCIA,
SAUL GARCIA, JR.
DANIEL GARCIA,
CONSUELO GARCIA,

        Defendants.

**JOINT SENTENCING MEMORANDUM OF SAUL GARCIA
AND THE GARCIA FAMILY**

Saul Garcia ("Mr. Garcia") is a hardworking, charitable, devoted father and husband, and patriarch of a leading family in a small-town community in southwest Georgia. *See* Exhibit 1, A-V. Mr. Garcia entered a guilty plea, along with his wife and two sons, pursuant to Rule 11 Plea Agreements, to resolve completely all issues in this case, which arose from an enforcement action that took place more than 6 years ago. Mr. Garcia has pled guilty to a felony violation. However, taking into consideration all the factors set forth in 18 U.S.C. § 3553(a), Mr. Garcia respectfully requests this Court sentence him to three years of probation so that Mr. Garcia can continue to operate his masonry company and support his family's agricultural labor businesses to satisfy the family's significant financial punishments under the Plea Agreements, and for the economic benefit of all of those who depend upon the Garcias' continued operations and contributions to the Moultrie, Georgia community.

    **I.**    **The Offense Conduct**

As set forth in paragraph nos. 16-23 of Mr. Garcia's Presentence Report ("Garcia PSR"), Mr. Garcia, in connection with Saul, Jr., Daniel and Connie, facilitated transportation of H2A

agricultural workers (all legally in the United States) from Georgia (where they were legally authorized to work) to Wisconsin (where the controlling H2A applications did not allow) for financial gain. The financial gain was realized by the farmer whose crops were harvested and sold, the Garcias and the workers who were paid for their labor. The Garcia family is remorseful for their actions, and since the inception of this case have only sought an equitable resolution which would allow them to make amends for their mistakes. Mr. Garcia's goal has been to accept responsibility and continue to be a laborer to support his family.

While the Garcias made mistakes in employment choices, they treated their H2A employees fairly and consistent with the market's conditions. When presented with the economic opportunity, the H2A workers volunteered to work in Wisconsin rather than return to Mexico as work in Georgia ended. The H2A workers in both Georgia and Wisconsin were paid the prevailing rate for agricultural labor of approximately $8 – $11 per hour.[1] All H2A employees were paid by paycheck. Workers were provided room and board. And while the workers may have been dependent on others for transportation to the Wisconsin fields, any restrictions placed on any employees by the Garcias related to their non-work activities was to prevent detection by law enforcement – of the H2A workers being geographically where they were not allowed and of those members of the Garcia family with them in Wisconsin.

Moreover, there was nothing provided in the discovery from the government, including all the interviews of recent and past employees, that suggested the Garcias mistreated any of their H2A employees while they were working the fields in Georgia.[2] In addition, as set forth in

---

[1] The Garcias readily admit they were ignorant of the H2A wage differential under Department of Labor standards between Wisconsin (which has a higher rate) and Georgia (which has a lower rate). The $217,382.14 of agreed restitution represents the entire amount of that regulatory wage shortfall.

[2] The government submitted seventeen victim impact statements to the U.S. Probation Department. Ten out of the seventeen make no suggestion that conditions were different in Wisconsin. In addition, six of the seventeen returned in 2016 (after working in 2015) from Mexico to work for the Garcias in Georgia and then in Wisconsin.

2

the attached letters from the Georgia farmers and others who have worked with the Garcias for years, the Garcias provided care for their employees and looked out for their well-being. *See e.g.,* Exhibit 1, A-V.

>    II.    Why Did the Garcias Engage in this Conduct?

As fully explained in the Garcia Family Acceptance of Responsibility and Additional Facts Relevant to the Offenses submitted during the PSR process, the economic relationship between the Garcias and one of its Georgia farmers (with significant Wisconsin operations), the Borzynskis, was the driving force that led to the Garcias' ill-fated actions.

As stated there, it was well-known in the Georgia farming community that the Garcias used H2A workers in Georgia. The Garcias primarily had H2A workers starting in 2014. Saul and David Borzynski had numerous conversations starting in early 2015 where Saul asked David for a letter of intent for H2A workers in Georgia, and later for Wisconsin. David dangled the promise of an H2A agreement, first for Georgia and later for Wisconsin, to induce the Garcias to bring workers to Wisconsin.

The Borzynskis provided several iterations of the standard H2A letter in support of the Garcia's Georgia H2A petition for 2016. Stefanie drafted the letters, discussed them with David, had them signed and emailed them to Daniel. Stefanie specifically contemplated in her November 13, 2015 letter that H2A workers would be housed in the mobile homes that the Garcias rented. It is unquestionable that the Borzynskis knew the Garcias were using H2A workers on Borzynski Farms.

Moreover, the Borzynskis knew the Garcias did not have a Wisconsin H2A petition for 2015 or 2016. This was obvious not only based on Saul's repeated requests for a letter of intent to support such petition, but also because the Borzynskis would have been the only farm in

3

Wisconsin to sign on to such a petition. It is not as if the Garcias had workers in Wisconsin legitimately like they did in Georgia to simply pull from another farm as needed to work for the Borzynskis. The Borzynskis were the only farmer for whom the Garcias came to Wisconsin to work. The Garcias had absolutely no connection to Wisconsin other than the Borzynskis.

David initially offered to put the Garcia workers on the Borzynski's payroll because he knew they were not authorized to be here. Stefanie overruled David because she feared liability. The Borzynskis arranged for transportation and housing for 2015 because the Garcias were unfamiliar with Wisconsin and the Borzynskis were desperate to get the workers here. In 2016 though, Stefanie got nervous and wanted everything in the Garcia's name to shield the Borzynskis from liability.

The Garcia H2A workforce that the Garcias brought to Wisconsin in 2015 and 2016 had just completed work on Borzynski Farms in Georgia a few months earlier. Abel Martinez worked as a Garcia H2A worker on Borzynski Farms since 2012 and every year thereafter. He worked in both Georgia and Wisconsin. AV-4 identified three dozen workers who worked in both Georgia and Wisconsin in 2015 and 2016. Yet, the Borzynskis claim to have no idea the Garcias brought H2A workers to Wisconsin. Ms. Garcia-Olalde worked on Borzynski Farms for years and worked in both Georgia and Wisconsin. She was the only female H2A worker, managed the packing shed in both states and had direct contact with Mike and David. It is preposterous that the Borzynskis pretend not to have recognized Ms. Garcia-Olalde or the dozens of other H2A workers who worked in both Georgia and Wisconsin.

David's efforts to solicit Beiza and the Garcias to send workers to Illinois in 2017 was further demonstration of his complicity in violating the law. The Borzynski letters to Beiza in 2018 completely undermine Stefanie's and David's claims in their respective proffer interviews

4

that they did not recognize the 2015 Garcia H2A letters and did not know those letters were issued to procure H2A workers.

The Borzynskis took advantage of the Garcias who were just starting to grow their business and were looking for opportunity. Mike and David recognized that the Garcias were extremely hard working and outperformed other contractors by excelling at both production and quality, whereas other contractors could typically only accomplish one or the other.

On several occasions, the Garcias declined to go or were prepared to leave Wisconsin and not come back, but David or Mike repeatedly convinced them to stay. The Garcias trusted David when he promised that 2016 would be the last time they would come to Wisconsin without an H2A contract. Of course, this never came to fruition because law enforcement stopped the school bus carrying Garcia workers in November 2016.

About a month after the bus stop, the Garcias ran into David and Mike in a Georgia diner. The Garcias asked David and Mike how they were doing. David replied "*good, I just bought a plane. Thanks to you guys. So, I guess you bought me a plane.*" Not only does this statement run contrary to the image David portrayed in his debrief of a disengaged, blue-collar farmer nearing retirement, it also further highlights that the government's main target in this investigation should have been the Borzynskis rather than the Garcias.

The Garcias have accepted responsibility for the poor decisions they made in the name of pursuing opportunity, namely bringing H2A workers to Wisconsin in violation of the worker program and the document violations we have acknowledged.

Defense counsel has been unable to find any other example in the United States of a case similar to this one that the government prosecuted criminally.[3] In fact, H2A violations are almost

---

[3] The only reported prosecutions for H2A violations against a labor contractor include *U.S. v. Bart,* 888 F. 3d 374 (8th Cir. 2018), and a companion case *U.S. v. Svihel,* 2016 U.S. Dist. LEXIS 40559 (D. Minn. Feb. 25, 2016), where

5

always prosecuted as civil violations through Department of Labor enforcement actions. Beiza may have committed H2A violations in 2017 and 2018, including an incident where a worker died who was not supposed to be in Georgia. He has not been criminally prosecuted. Yet, the Garcias, otherwise hard-working and law-abiding citizens, have been charged and convicted and have suffered tremendous financial, reputational and emotional harm.

Meanwhile, the Borzynskis profited handsomely for years off the Garcias' backs. Two wrongs don't make a right, but disparity and proportionality of punishment is directly relevant to an appropriate sentence for Mr. Garcia. The reality is the government prosecuted the "middleman" in a heavy-handed manner while the farmer, who created demand, has escaped all consequences. We feel this is inequitable and the Court should take this reality into serious consideration in determining how to sentence the Garcias.

In addition, as further explained in the many personal letters attached to this Sentencing Memorandum, Mr. Garcia, an immigrant himself, and somebody who worked tirelessly to provide for his family, was sympathetic to those H2A workers who wished to work hard, demonstrate loyalty and provide for their families. Thus, when the H2A workers had no more work under the Georgia contracts, the Garcias were sympathetic to their plight and admired their similar hard working work ethic and gave them the chance to earn more before their visas expired and they were required to return home to Mexico. Thus, to the Garcias it was in their eyes an appropriate economic union of employee, labor contractor, and farmer that was to the economic benefit to all three parties. While illegal, the Garcias rationalized their actions for this reason and are remorseful for their prohibited conduct.

---

the H2A labor contractor was paying "kickbacks" to the recruiters (who manipulate the supply of H2A workers) – no such arrangement is present in this case.

### III. How are the Garcias Making Amends for Their Transgressions?

The main conduct at issue in this matter occurred more than six years ago. Mr. Garcia and his family have been aware of and under the government's watchful eye, informally from the date of the traffic stop and search warrant execution in the Fall of 2016, until the charging in this matter, 2 ½ years later in May of 2019. They have similarly been formally under the Court's supervision since May 22, 2019, for more than 3 years. There have been no issues of H2A employment with the Garcias in the last 6 years.

As set forth in the Plea Agreements, Mr. Garcia also agreed and consented to a debarment of Garcia & Sons Harvesting, Inc. ("G&S") and C&D Harvesting, Inc. ("C&D") from the H2A program for a period of 3 years. In doing so, the Garcias waived all their rights as it relates a parallel enforcement proceeding by the Department of Labor, fully accepting this collateral consequence and avoiding the need for the government to expend any other resources seeking prohibition of their companies from participating in the H2A program.

Finally, the Plea Agreements applicable to the Garcias provide that the Garcias will be paying significant financial penalties. They are required to pay restitution of a minimum of $217,382.14, and the government is seeking more than $550,000.00 in additional restitution.

### IV. Recidivism by the Garcias is Highly Unlikely.

As demonstrated by the attached character letters, Mr. Garcia has a substantial extended family, church community and agricultural community standing by and fully supportive of him and his family going forward. The Court can safely assume Saul Garcia will never commit another federal crime and that he has been specifically deterred from any further criminal activities by the significant stress of a public, multi-year investigation and federal prosecution in a rural community area such as Moultrie, Georgia. Mr. and Mrs. Garcia and their family have

become the object of ridicule, scorn and small-town gossip. Their children have endured a difficult time at school, despite their best efforts to shield them from their significant mistake.

**V.      Incarceration is Not an Appropriate Sanction for Saul Garcia.**

18 U.S.C. § 3553(a) requires the imposition of a sentence that "is no greater than necessary" to fulfill the four purposes of sentencing: punishment, deterrence, incapacitation and rehabilitation. However, 18 U.S.C. § 3582 makes clear that if the first three purposes do not support a sentence of incarceration, rehabilitation by itself cannot because prison in inherently not rehabilitative. And although the advisory sentencing guidelines suggest a period of incarceration and the government will seek such period of incarceration, the guidelines are only one of the seven considerations the Court should consider under the totality of the facts and circumstances of this case. As described above, the nature and circumstances of the offense and history and characteristics of Mr. Garcia (§ 3553(a)(1)) and the purpose of sentencing outlined in § 3553(a)(2), are achieved with a sentence of probation.

As set forth in the PSR, Mr. Garcia, who is 52 years old, suffers from diabetes and has no criminal history. The offense involved no guns, no drugs, and no violence. There is no dispute that the harvesting of agricultural crops is difficult, strenuous and relatively low paying (hence the need for an H2A program to begin with as domestic citizens refuse to perform this work), but the economic reality is that the alleged victims were paid more money to stay longer in the United States to perform this labor allowing that money to be returned to their families in Mexico.

Furthermore, probation is an appropriate sentence when one considers § 3553(a)(6): the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, or in this case have not been charged at all. As

indicated above, undersigned counsel, through a search of all federal cases across the country, was able to locate only two cases prosecuted against a labor contractor for H2A violations, with circumstances substantially different from the instant offense.

Against this backdrop, it is an unjustifiable outcome in disparity to have the farmer (who created demand) suffer no consequences, the recruiter (who corruptly leveraged the workers' financial plight) to be given time served and allowed to voluntarily return to Mexico in freedom[4], and Mr. Garcia, as the "middleman" to be a convicted felon AND serve months or years of incarceration, which will result in the financial ruin of his business and family.

Mr. Garcia has accepted responsibility for his actions, pled guilty to a life changing felony offense, agreed to debarment of his companies, and agreed to pay substantial restitution. Adding an additional 3 years of court supervision to the 3 years he has been under is an appropriate additional sanction.

## **CONCLUSION**

A sentence of probation for Mr. Garcia satisfies all of the sentencing goals of 18 U.S.C. § 3553. Such a sentence is a just punishment under the facts and circumstances of this case and avoids unwarranted sentencing disparities against the "middleman" in the H2A world of labor contracting, provides adequate deterrence to the criminal conduct at issue and protects the public from any further crimes of the Garcias. In addition to the significant negative personal impact on Mr. Garcia's family, a sentence of incarceration for Mr. Garcia will force the liquidation of his masonry business, result in the loss of many jobs and will have a significant negative financial impact on the related services and businesses that are supported by Garcias' businesses.

---

[4] See attached sealed Exhibit 2.

Dated: December 2, 2022.

**MICHAEL BEST & FRIEDRICH LLP**

*s/Daniel J. Vaccaro*
Daniel J. Vaccaro (SBN 1018037)
790 North Water Street, Suite 2500
Milwaukee, WI 53202
(414) 271-6560
djvaccaro@michaelbest.com

Attorney for Saul Garcia

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

**MICHAEL BEST & FRIEDRICH LLP**

By: */s/Daniel J. Vaccaro*
Daniel J. Vaccaro, SBN 1018037
djvaccaro@michaelbest.com
790 North Water Street, Suite 2500
Milwaukee, WI 53202
Ph.: 414-271-6560
Fax: 414-277-0656

Attorney for Saul Garcia

214698-0001\33974982.v1